UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KATHLEEN HART-COLEMAN, | : Case No. 3:19-cv-364 |
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

## I. INTRODUCTION

Plaintiff Kathleen Hart-Coleman brings this case challenging the Social Security Administration's most recent denial of her application for disability benefits. This is her second case before this Court concerning the Administration's denial of her application.

In July 2013, Plaintiff filed an application for Disability Insurance Benefits (DIB). The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. She then filed a case before this Court, which resulted in an Order vacating the Commissioner's non-disability finding and remanding the case for further administrative proceedings.

On remand, ALJ Kenyon held a subsequent hearing and concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council again denied Plaintiff's request for review.

Plaintiff subsequently filed this action. She now seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 13), and the administrative record (Doc. No. 8).

## II.     BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2009, later amending to December 1, 2009. Plaintiff was forty-five years old on her date last insured. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563. She has a limited education.

The evidence of record related to Plaintiff's impairments is sufficiently summarized in the ALJ's decision (Doc. No. 8-8, PageID 675-87), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

### III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to the ALJ to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment from the alleged disability onset date of December 1, 2009, through the date last insured of December 31, 2014.

Step 2: Through the date last insured, Plaintiff had the following severe impairments: degenerative joint disease of the knees, a history of mild

|  |  |
|---|---|
|  | rheumatoid arthritis, Sjogren's syndrome, lupus, a depressive disorder, and an anxiety disorder. |
| Step 3: | Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), through the date last insured, consists of "sedentary work … subject to following limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing indoor work; (5) occasional operation of foot controls; (6) frequent use of the hands for handling and fingering; (7) no concentrated exposure to temperature extremes; (8) limited to performing unskilled, simple, repetitive tasks; (9) occasional contact with co-workers, supervisors, and the public; (10) no jobs involving sales transactions or negotiations; (11) no fast paced production work or jobs involving strict production quotas; and (12) limited to performing jobs in which there is very little, if any, change in the job duties or the work routine from one day to the next." |
| Step 4: | Plaintiff was unable to perform her past relevant work. |
| Step 5: | Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. |

(Doc. No. 8-8, PageID 677-86). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 687.

V.   DISCUSSION

Plaintiff asserts two errors in the present action. She contends that error occurred in weighing the medical opinion rendered by her treating physician, Dr. Kurt A. Fleagle. She also argues that the Step Five determination is not supported by substantial evidence.

A.  Treating Source Opinion

In the present case, Plaintiff challenges the assessment of the medical opinion of treating physician, Dr. Fleagle. She argues that his opinion was not properly assessed under the treating physician rule and that there were not good reasons for affording Dr. Fleagle's treating source opinion "partial weight." (Doc. No. 9, PageID 1451-52).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions, and "[k]ey among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

In the event that the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the

length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. "The purpose of the good reasons rule is twofold: first, 'to let claimants understand the disposition of their cases'; and second, to 'ensure[ ] that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule.'" *Hargett*, 2020 WL 3833072, at *4 (citations omitted; brackets in *Hargett*).

Dr. Fleagle rendered two opinions in this case. Plaintiff's primary focus is on the assessment of Dr. Fleagle's earlier opinion, rather than his latter opinion, which was rendered three years after her date last insured. In his earlier opinion, Dr. Fleagle determined that Plaintiff could perform a reduced range of sedentary work for four hours per day. (Doc. No. 8-7, PageID 662). More specifically, he found that she could lift less than 10 pounds occasionally, but never 10 pounds or more. *Id.* He opined that she could grasp, turn, or twist objects for approximately 50% of an 8-hour workday and complete fine manipulations and reach for 40% of an 8-hour workday. *Id.* at 663. She could sit for about 30 minutes at a time and stand for about 20 minutes at a time. *Id.* at 661.

Dr. Fleagle's opinion was afforded "partial weight," and in deference to his opinions, the ALJ limited Plaintiff to "sedentary work."  (Doc. No. 8-8, PageID 684). However, the ALJ explained that "giving significant weight to his conclusions that [she] could only perform work four hours per day is unwarranted" because these conclusions were inconsistent with her level of daily activity as well as the level of treatment that she received.  *Id.*  He also determined these conclusions "appear[ed] to be based upon an unqualified acceptance of [Plaintiff's] subjective complaints" and that they were not supported by Dr. Fleagle's treatment records or those of other specialists.  *Id.*

Plaintiff argues that this assessment does not reflect proper application of the treating physician rule, and that the same error occurred as in her previous case before the Court.  In that case, the Court found the ALJ erred by failing to "refer to the treating physician rule or either of its conditions."  *Coleman v. Berryhill*, No. 3:16-cv-341, 2017 WL 4076459, at *7 (S.D. Ohio, Sept. 13, 2017) (Ovington, M.J.).  The same is not true here.  In this case, the ALJ considered Dr. Fleagle to be a treating physician and analyzed his opinions under the treating physician rule.  However, this does not mean that Plaintiff's assertions are entirely without merit because an ALJ "may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552.

As set forth above, there were several reasons for affording Dr. Fleagle's initial

8

assessment partial weight such that his opinions were "inconsistent with [Plaintiff's] level of daily activity." (Doc. No. 8-8, PageID 684). However, he did not explain how her daily activities were inconsistent, and careful review of the record reflects that Dr. Fleagle's opinions do not present as inconsistent in this way. Dr. Fleagle offered that Plaintiff could never lift 10 pounds or more, which is consistent with her testimony that she could not lift more than 10 pounds. (Doc. No. 8-8, PageID 682). Likewise, similar to Dr. Fleagle's findings, Plaintiff estimated that she could stand for about 15 to 20 minutes and sit for 30 to 60 minutes at a time. *Id.* She indicated that, while at home, she sometimes requires a wheelchair as well as "rails to assist her when walking around the house and balancing." *Id.* She also requires help with dressing and grooming sometimes due to her pain. *Id.* Plaintiff further reported that she has difficulty grasping and manipulating objects such as buttons and zippers, and that her joint pain interferes with her ability to cook because she cannot chop food or hold onto objects. *Id.* These reports align with Dr. Fleagle's opinion that she is limited in her ability to grasp and turn objects and complete fine manipulations. She also avoids large stores because she cannot walk for significant periods of time. *Id.*

Additionally, the ALJ also fails to explain how Dr. Fleagle's opinions were "inconsistent with the level of treatment the claimant received prior to the date last insured." (Doc. No. 8-8, PageID 684). This is notable considering that this Court previously observed that Plaintiff had an "extensive" treatment history. *Coleman v. Berryhill*, 2017 WL 4076459, at \*9. In the previous case, the Court described that in

addition to regularly seeing Dr. Fleagle, Plaintiff also reported to several specialists including two rheumatologists, a podiatrist and an orthopedist. *Id.* at *8-9. Dr. Fleagle's treatment records regularly reflect the multifaceted nature of Plaintiff's treatment. (Doc. No. 8-7, PageID 383, 384, 386, 393, 394, 398). The evidence of record also shows that Dr. Fleagle referred Plaintiff to many of these specialists. *Id.* at 403-06.

Likewise, notwithstanding the longitudinal 20-year treatment history between Dr. Fleagle and Plaintiff, the ALJ determined that Dr. Fleagle's opinions "appear[ed] to be based upon an unqualified acceptance of [Plaintiff's] subjective complaints." (Doc. No. 8-8, PageID 684). He provided no support for this specific finding. This is problematic because "physicians are trained to both consider and investigate subjective reports as opposed to accepting them on face value," and given Dr. Fleagle's substantial treatment history, he was well-positioned to discern the validity of Plaintiff's subjective complaints. *See Werts v. Berryhill*, No. 3:16-CV-316, 2017 WL 3381113, at *8 (S.D. Ohio Aug. 7, 2017) (Ovington, M.J.); *see also Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994) ("According to the Secretary, a physician's job is not to question his or her patient's statements, but is rather to match those statements with a diagnosis").

Dr. Fleagle's opinion as to Plaintiff's ability to perform sedentary work for four hours per day is also not as out of proportion to the evidence of record as the ALJ and the Commissioner suggest. Take for example, the medical opinion of Dr. Danopulos who examined Plaintiff on a consultative basis. His opinion, which was afforded substantial

weight, reflected that Plaintiff should be limited to "semi-sedentary or sedentary work" and lift no more than 10 pounds. (Doc. No. 8-8, PageID 684). In contrast, state agency reviewing physicians, Drs. Friehofner and Delphia limited Plaintiff to "light level work with mostly occasional crouching and crawling limitations." *Id.* Despite stating that he was giving "greater weight to the opinions of Dr. Fleagle and Dr. Danopulos," the ALJ nevertheless afforded these opinions the same weight as that of Dr. Fleagle's opinion. *Id.*

Furthermore, in its response, the Commissioner argues that the ALJ properly rejected Dr. Fleagle's opinions because his opinions were conclusory, lacked meaningful explanation and were internally inconsistent. (Doc. No. 12, PageID 1475, 1481). However, none of these reasons were cited by the ALJ in weighing Dr. Fleagle's opinions. Accordingly, the undersigned declines to accept the Commissioner's post hoc rationalizations. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014). Likewise, while the ALJ noted some treatment records that reflect "minimal abnormality," these records alone do not resolve the issues discussed above, nor do they independently serve as substantial evidence in support of the ALJ's assessment of Dr. Fleagle's opinions.

In sum, the evaluation of Dr. Fleagle's opinions under the treating physician rule is not supported by substantial evidence and the ALJ failed to provide good reasons for affording his opinions partial weight. Accordingly, Plaintiff's asserted error is well-taken.[1]

---

[1] The undersigned declines to address Plaintiff's remaining asserted error.

11

## VI.     REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary

evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Kathleen Hart-Coleman was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

September 27, 2021                         *s/Sharon L. Ovington*
                                            Sharon L. Ovington
                                            United States Magistrate Judge